# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
#### NORFOLK DIVISION

_____
                                )
In re:                          )              Case No. 07-71761-SCS
                                )
JAMY MONTE VARONA, JR.,         )
DANIELLE DEMETRIUS VARONA,       )
        *Debtors*.              )              Chapter 13
_____)

## MEMORANDUM OPINION

This matter came on for hearing on April 22, 2008, upon the Objection to Claim Number 1,

Objection to Claim Number 9, and the Motions for Sanctions (collectively, "the Claim Objections")

filed by the debtors, Jamy Monte Varona, Jr., and Danielle Demetrius Varona (collectively, "the

Varonas"), against Portfolio Recovery Associates, LLC ("Portfolio Recovery").  This matter also

came on for hearing upon the Motion for Authority to Withdraw Claim Number 1 and Motion for

Authority to Withdraw Claim Number 9 (collectively, "the Motions to Withdraw") by Portfolio

Recovery and the Objection to the Withdrawal of Claim Number 1 and the Objection to the

Withdrawal of Claim Number 9 (collectively, the "Objections to Withdrawal") filed by the Varonas.

After consideration of the pleadings, the stipulated evidence, and the arguments of the parties, the

Court took the matter under advisement. This Court has jurisdiction over this proceeding pursuant

to 28 U.S.C. §§ 157(b)(2) and 1334(b).  Venue is proper pursuant to 28 U.S.C. § 1409(a). This

Memorandum Opinion constitutes the Court's findings of fact and conclusions of law.

### I. Findings of Fact

The Varonas filed their petition under Chapter 13 of the United States Bankruptcy Code in

this Court on August 13, 2007.  The Varonas filed a Chapter 13 Plan on August 21, 2007. Their

Chapter 13 Plan was confirmed by an order entered on February 12, 2008.

Portfolio Recovery filed a proof of claim on August 16, 2007, in the amount of $97.81 ("Claim Number 1"). Claim Number 1 stated that the debt was incurred on January 5, 1999, with a last payment date of August 9, 1999, and a charge-off date of April 5, 2000. Portfolio Recovery purchased the account from Providian National Bank on March 24, 2004. Portfolio Recovery filed a second proof of claim on September 13, 2007, in the amount of $3,629.29 ("Claim Number 9"). Claim Number 9 stated that the debt was incurred on November 1, 1997, with a last payment date of May 16, 2000, and a charge-off date of March 4, 2001. Portfolio Recovery purchased this account from Sears National Bank on April 25, 2002. Both Claim Number 1 and Claim Number 9 were originally incurred by Mrs. Varona as credit card debt.

The Varonas objected to Claim Number 1 and Claim Number 9 on September 19, 2007. In support of their Claim Objections, the Varonas allege, among other things, the following:

> 4. A careful pre-petition review of the debtors' credit reports did not show any judgments against the debtors in favor of the current creditor or its assignor, nor did the credit reports show any listing whatsoever of this claim, by Portfolio Recovery Associates, LLC, by [the assignor] or by any other creditor name in the approximate same dollar amount.

> 5. The face of the proof of claim form as filed by Portfolio Recovery leaves item number 3 "If court judgment, date obtained" blank.

> 6. The applicable statute of limitations on collection actions in Virginia is, at most, five years and has not ever been tolled until the filing of the present bankruptcy case on August 13, 2007. Accordingly, the statute of limitation on this potential claim has long since run out and the claim is time barred and unenforceable.[1]

---

[1] The Varonas contend the most favorable possible application of a Virginia statute of limitations to Portfolio Recovery is found in § 8.01-246 of the Virginia Code:

> Subject to the provisions of § 8.01-243 regarding injuries to person and property and of § 8.01-245 regarding the application of limitations to fiduciaries, and their bonds, actions founded upon a contract, other than actions on a judgment or decree, shall be brought within the following number of years next after the cause

7. The proof of claim filed herein was not filed in good faith and is fraudulent on it [*sic*] face.

Claim Objections, ¶¶ 4–7.

The Varonas prayed that their Claim Objections be sustained and moved for an award of attorney fees and the imposition of sanctions against Portfolio Recovery.[2] On September 27, 2007, Portfolio Recovery filed two Notices of Withdrawal of Claim, wherein it attempted to withdraw Claim Number 1 and Claim Number 9 (collectively, "Withdrawals"). On September 28, 2007, the

---

of action shall have accrued:

1. In actions or upon a recognizance, except recognizance of bail in a civil suit, within ten years; and in actions or motions upon a recognizance of bail in a civil suit, within three years, omitting from the computation of such three years such time as the right to sue out such execution shall have been suspended by injunction, supersedeas or other process;

2. In actions on any contract which is not otherwise specified and which is in writing and signed by the party to be charged thereby, or by his agent, within five years whether such writing be under seal or not;

3. In actions by a partner against another for settlement of the partnership account or in actions upon accounts concerning the trade of merchandise between merchant and merchant, their factors, or servants, within five years from the cessation of the dealings in which they are interested together;

4. In actions upon any unwritten contract, express or implied, within three years.

Provided that as to any action to which § 8.2-725 of the Uniform Commercial Code is applicable, that section shall be controlling except that in products liability actions for injury to person and for injury to property, other than the property subject to contract, the limitation prescribed in § 8.01-243 shall apply.

Va. Code Ann. § 8.01-246 (1950) (2007 Repl. Vol.).

[2] By their inclusion of a prayer for an award of sanctions and attorney fees in the Claim Objections, the Court treated the Claim Objections additionally as Motions for Sanctions.

3

Varonas objected to the attempted withdrawal of these claims.[3] In response to the Claim Objections,

Motions for Sanctions, and Objections to Withdrawal, Portfolio Recovery filed a request for

authority to withdraw Claim Number 1 and Claim Number 9 ("Motions to Withdraw") on October

19, 2007, in which Portfolio Recovery asserted that there would be no prejudice to the Varonas,

other creditors, or parties in interest if the Court permitted it to withdraw its claims.

In lieu of the presentation of evidence, the Varonas and Portfolio Recovery entered into a

Stipulation of Facts for consideration by this Court. The Stipulation provides as follow:

1. The Debtors filed their Chapter 13 case on August 13, 2007.

2. The Debtors filed their Chapter 13 Plan on August 21, 2007 which was confirmed by order dated  February 12, 2008.

3. Portfolio Recovery Associates, LLC filed its proof of claim (Claim number 1) on August 16, 2007 in the amount of $97.81, asserting a general unsecured – non-priority claim, noting on the proof of claim that the debt was incurred on January 5, 1999, with a last payment date of August 9, 1999, and a charge-off date of April 5, 2000. Portfolio Recovery purchased this account from Providian National Bank on March 24, 2004. A copy of the claim form and attachment as filed is attached as Exhibit A.

4. Portfolio Recovery Associates, LLC filed its proof of claim (Claim number 9) on September 13, 2007 in the amount of $3,629.29, asserting a general unsecured – non-priority claim, noting that the debt  was incurred on November 1, 1997, with a last payment date of May 16, 2000, and a charge-off date of March 4, 2001. Portfolio Recovery purchased this account from Sears National Bank on April 25, 2002. A copy of the claim form and attachment as filed is attached as Exhibit "B" to the Stipulation.

---

[3] The expiration of time between the filing of the Claim Objections and the hearing conducted by the Court is explained by the fact the scheduled hearings on the Claim Objections and the Motion for Sanctions were continued on the motion of the parties several times to permit briefing by the parties and to permit the Office of the United States Trustee to conduct an investigation for the purpose of determining whether the United States Trustee for Region Four would elect to intervene in this proceeding. An investigation was undertaken by the United States Trustee, and he elected not to intervene.

5. The Debtors' credit reports did not show any judgments against the debtors in favor of Portfolio Recovery or its assignors, nor did the credit reports show any listing whatsoever of these claims, by Portfolio Recovery Associates, LC, by Sears National Bank, by Providian National Bank or by any other creditor name in the approximate same dollar amount.

6. The Debtors would testify that they were totally unaware of any potential claims by this creditor or its assignors.

7. Portfolio Recovery would present evidence that prepetition, it sent letters and placed numerous telephone calls to Danielle Varona about the claims.

8. The Debtors did not list the claims described in paragraphs 3 and 4 above.

9. The faces of the proof of claim forms as filed by Portfolio Recovery leaves item number 3 "If court judgment, date obtained" blank and the Debtors' credit reports also show that no judgments have been obtained against them.

10. On September 19, 2007, the Debtors filed their objections to claims 1 and 9. There had been no communications on behalf of the Debtors to Portfolio Recovery before the objections were filed.

11. On September 27, 2007, Portfolio Recovery filed with the Court documents attempting to withdraw claims 1 and 9.

12. The attempted withdrawal was signed by Dolores Garcia, Lead Bankruptcy Specialist, Portfolio Recovery Associates, L.L.C., P.P. Box 41067, Norfolk, VA 23541. No state bar number or telephone number was listed and there was no certificate of service.

13. Dolores Garcia is not an attorney.

14. Portfolio Recovery Associates LLC is a wholly owned subsidiary of Portfolio Recovery Associates, Inc., ["PRA"] which is a publicly traded corporation.

15. In the ordinary course of business, PRA files proofs of claim in bankruptcy cases across the country. It is not uncommon for PRA to file proofs of claim on accounts that would be beyond the applicable statute of limitations for filing a collection suit. If an objection is filed to such a claim and such objection properly asserts the affirmative defense of the statute of limitations, PRA is willing to withdraw its claim or to allow such objection to be sustained.

16. Fourteen claims have been filed in the Varona case including the following:

5

| Claim # | Current Creditor | Original Creditor | Amount of claim |
|---------|------------------|-------------------|-----------------|
| 1 | Portfolio Recovery | Providian Nat Bank | $97.81 |
| 7 | Asset Acceptance | JC Penney | $106.02 |
| 9 | Portfolio Recovery | Sears | $3,629.29 |
| 10 | Roundup Funding | Household/Levitz | $4,294.12 |
| 11 | Roundup Funding | Amoco | $206.91 |
| 12 | LVNV/Resurgent Cap | Cap 1/Citibank | $3,060.08 |
| 13 | Fan Distributing, LLC | Chase | $7,144.55 |

Joint Stipulation of Facts, filed March 20, 2008.

On January 15, 2008, this case was reassigned to the undersigned Bankruptcy Judge by reason of the retirement of the incumbent judge to whom the matter was originally assigned.

## II. Conclusions of Law

This matter arises at a time when bankruptcy courts are examining the integrity of the claims process in various contexts. *See, e.g.*, *Nosek v. Ameriquest Mortgage Co.* (*In re Nosek*), ___ B.R. ___, Case No. 02-46025-JBR, 2008 WL 1899845, at *4 (Bankr. D. Mass. Apr. 25, 2008); *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 394–95 (Bankr. W.D. Pa. 2008) (describing pending proceedings by the Chapter 13 Trustee and the United States Trustee to examine loan histories and impose sanctions on a creditor). The Varonas argue that Claim Number 1 and Claim Number 9 are fraudulent and subject to sanction by this Court pursuant to 11 U.S.C. § 105.[4] The Varonas allege that an attempt to collect a debt which is time-barred has been found to be a violation of the Fair

---

[4] 11 U.S.C. § 105(a) provides as follows:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (2008).

Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, and while acknowledging that

the FDCPA is not applicable to bankruptcy proceedings, the Court should find the reasoning from

decisions under the FDCPA to be analogous and conclude that the filing of a proof of claim for a

debt subject to a defense of a statute of limitations is fraudulent and sanctionable pursuant to 11

U.S.C. § 105.[5] The Varonas also assert that the doctrine of laches prevents Portfolio Recovery from

enforcing its claims against them and that the delay has prejudiced them, providing an additional

basis upon which to impose sanctions. Portfolio Recovery defends on a number of bases, principally

arguing that the proofs of claim under scrutiny here are not fraudulent in nature as the indebtedness

underlying such claims was not extinguished by the running of the statute of limitations under

Virginia law.

The Varonas' arguments as to the burden placed upon them by the claims process in their

case is mirrored in the debtors' concerns examined in *In re Henry*:

> Although the dollar amounts of the claims challenged by the debtors are relatively
> small, resolution of the above issues presents serious economic ramifications for both
> debtors and creditors. The debtors argue that they should not have to incur the cost
> of making a claims objection based on lack of supporting documentation when the
> Rules initially place the burden of providing support on the creditor. In addition,
> because the cost of pursuing an objection frequently exceeds the distribution the
> claim will receive under the plan, they are forced by the economics of the process
> just to pay the claim even if they have valid defenses to it.

---

[5]  At an earlier hearing in this matter, counsel for the Varonas conceded that Rule 9011 of
the Federal Rules of Bankruptcy Procedure was unavailable under the circumstances here to
provide a basis for the issuance of sanctions. In order to seek sanctions pursuant to Rule 9011, a
two-step process must be followed.  The motion must first be served on the opposing party.
Then, after the twenty-one day "safe harbor" has passed, the party seeking sanctions may file the
motion with the court. *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389
(4th Cir. 2004); *In re Sammon*, 253 B.R. 672, 678 (Bankr. D.S.C. 2000) (citing *Ridder v. City of
Springfield*, 109 F.3d 288, 294 (6th Cir. 1997)). Here it is not disputed the Claim Objections and
Motions for Sanctions were not served upon Portfolio Recovery or their counsel prior to filing
them with this Court.

*In re Henry*, 311 B.R. 813, 816 (Bankr. W.D. Wash. 2004).

In adjudicating the Claim Objections and the Motions for Sanctions, it is necessary to consider the claims process in bankruptcy cases, the bases for issuance of sanctions for the improper filing of a proof of claim, the applicability of the FDCPA to the instant proceedings, and the provisions of Virginia law governing the validity of the debts underlying the Proofs of Claim to which the Varonas object.

## A. The Claims Process in Bankruptcy Cases

The filing of a proof of claim in a bankruptcy case is authorized by the succinct directive of § 501 of the Bankruptcy Code: "A creditor or an indenture trustee may file a proof of claim."[6] 11 U.S.C. § 501(a) (2008). The requirements of a proof of claim are provided in Federal Rule of Bankruptcy Procedure 3001, which mandates, among other things, that a proof of claim be in writing and conform substantially to the appropriate Official Form, be executed by the creditor or the creditor's authorized agent, and, where based on a writing, filed with the original or a duplicate of that writing. Fed. R. Bankr. P. 3001(a)–(c) (2008). Official Form 10 also prescribes a number of requirements for a proof of claim.  *See* Official Form 10 (version 12/07).

The United States Code provides substantial criminal provisions relating to the filing of claims in a bankruptcy case, as 18 U.S.C. § 152 renders it a crime to file a false or fraudulent claim in a bankruptcy case. 18 U.S.C. § 152(4) (2008).[7]  The instructions for Official Form 10 remind

---

[6] The Bankruptcy Code defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A) (2008).

[7] 18 U.S.C. § 152 further provides for a fine or imprisonment up to five years, or both, for the filing a false or fraudulent proof of claim.

filers that "[c]riminal penalties apply for making a false statement on a proof of claim." Official

Form 10 (version 12/07).

Federal Rule of Bankruptcy Procedure 3001(f) provides that a proof of claim executed and

filed in accordance with the applicable rules constitutes prima facie evidence of the validity and the

amount of the claim. Fed. R. Bankr. P. 3001(f) (2008).  Section 502 of the Bankruptcy Code governs

the process of allowance and disallowance of claims in a bankruptcy case.[8] As such, a claim is

---

[8] Section 502 of the Bankruptcy Code provides, in pertinent part:

(a) A claim or interest, proof of which is filed under section 501 of this title, is
deemed allowed, unless a party in interest, including a creditor of a general
partner in a partnership that is a debtor in a case under chapter 7 of this title,
objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if
such objection to a claim is made, the court, after notice and a hearing, shall
determine the amount of such claim in lawful currency of the United States as of
the date of the filing of the petition, and shall allow such claim in such amount,
except to the extent that–

(1) such claim is unenforceable against the debtor and property of the
debtor, under any agreement or applicable law for a reason other than
because such claim is contingent or unmatured;

(2) such claim is for unmatured interest;

(3) if such claim is for a tax assessed against property of the estate, such
claim exceeds the value of the interest of the estate in such property;

(4) if such claim is for services of an insider or attorney of the debtor, such
claim exceeds the reasonable value of such services;

(5) such claim is for a debt that is unmatured on the date of the filing of
the petition and that is excepted from discharge under section 523(a)(5) of
this title;

(6) if such claim is the claim of a lessor for damages resulting from the
termination of a lease of real property, such claim exceeds–

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of–

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds–

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of–

(i) the date of the filing of the petition; or

(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates;

(8) such claim results from a reduction, due to late payment, in the amount of an otherwise applicable credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor; or

(9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide, and except that in a case under chapter 13,

10

deemed allowed unless one of the nine circumstances, as set forth in § 502(b), is triggered. For

example, a claim will be disallowed if the "claim is unenforceable against the debtor and property

of the debtor, under any agreement or applicable law for a reason other than because such claim is

contingent or unmatured . . . ." 11 U.S.C. § 502(b)(1) (2008).  Judge Mitchell of this Court has

explained the procedural process of claims consideration under the Bankruptcy Code:

> A claim for which a proof of claim has been filed is allowed unless an objection is
> filed. If an objection is filed, the court is required to determine the amount and
> validity of the claim as of the date of the filing of the petition. A properly filed claim
> is prima facie evidence of the amount and validity of the claim. For this reason, the
> objecting party has the initial burden of presenting sufficient evidence to overcome
> the prima facie effect of the filed proof of claim. Once the objecting party has done
> so, the burden of proof shifts to the creditor to establish the amount and validity of
> its claim.

*Official Comm. of Unsecured Creditors v. Fairchild Dornier GMBH* (*In re Dornier Aviation* (*N.

Am.*) *Inc.*), Adversary No. 02-8199-SSM, 2005 WL 4781236, at *11 (Bankr. E.D. Va. Feb. 8, 2005)

(citing 11 U.S.C. § 502(a)–(b); Fed. R. Bankr. P. 3001(f); *C-4 Media Cable S., L.P. v. Reds T.V. &

Cable, Inc.* (*In re C-4 Media Cable S., L.P.*), 150 B.R. 374, 377 (Bankr. E.D. Va.1992)).

### B. The Imposition of Sanctions for Filing a False or Fraudulent Proof of Claim

The Fourth Circuit Court of Appeals has recognized the authority of the Bankruptcy Court

to utilize civil contempt to carry out the provisions of the Bankruptcy Code pursuant to the

provisions of 11 U.S.C. § 105:

We see no reason to read into this language [of Bankruptcy Code section 105]

---

a claim of a governmental unit for a tax with respect to a return
filed under section 1308 shall be timely if the claim is filed on or
before the date that is 60 days after the date on which such return
was filed as required.

11 U.S.C. § 502 (2008).

11

anything other than its plain meaning that a court of bankruptcy has authority to issue any order necessary or appropriate to carry out the provisions of the bankruptcy code. We are of opinion that the order holding Burd in civil contempt was appropriate in carrying out the provisions of that code. Burd had been engaged in representing a debtor during the pendency of a case in bankruptcy and in connection with the case for which he had charged and received a fee without previous authority or approval of the bankruptcy court. Following a hearing on the matter, Burd was ordered to refund $14,000 of the fee and had not done so. We think an order holding him in contempt for his failure to comply with the previous order of the court was appropriate in carrying out the administration of the estate, and thus was authorized by 11 U.S.C. § 105(a).

*Burd v. Walters* (*In re Walters*), 868 F.2d 665, 669 (4th Cir. 1989).[9] No decision of the Fourth

Circuit Court of Appeals appears to have considered the appropriateness of utilizing § 105 in the

context of providing sanctions for a fraudulent proof of claim.[10]

---

[9]  The Fourth Circuit Court of Appeals has also found substantial inherent power on the part of courts by reason of their institutional nature:

> Due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates. This power is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers. Because the inherent power is not regulated by Congress or the people and is particularly subject to abuse, it must be exercised with the greatest restraint and caution, and then only to the extent necessary. Under the inherent power, a court may issue orders, punish for contempt, vacate judgments obtained by fraud, conduct investigations as necessary to exercise the power, bar persons from the courtroom, assess attorney's fees, and dismiss actions.

*United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461–62 (4th Cir. 1993) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 (1980) (restraint required because the inherent powers of a court are "shielded from direct democratic controls")).

[10]  The Seventh Circuit Court of Appeals has provided a summary of the bases for the sanction of a fraudulent proof of claim which interestingly does not include 11 U.S.C. § 105 as a sanctions basis:

> [P]arties who commit fraud on the bankruptcy court may be sanctioned by that court pursuant to Federal Rule of Bankruptcy Procedure 9011, which is analogous

Courts that have considered the availability of 11 U.S.C. § 105 as a means to sanction the filing of fraudulent proofs of claim are split over the question of whether §105 provides a basis for the imposition of sanctions for the filing of such a claim. A number of courts have concluded § 105 does not provide a private cause of action for this purpose. *See Yancey v. Citifinancial, Inc.* (*In re Yancey*), 301 B.R. 861, 868–69 (Bankr. W.D. Tenn. 2003); *Knox v. Sunstar Acceptance Corp.* (*In re Knox*), 237 B.R. 687, 699–700 (Bankr. N.D. Ill. 1999); *Lenior v. GE Capital Corp.* (*In re Lenior*), 231 B.R. 662, 673 (Bankr. N.D. Ill. 1999); *Simmons v. Ford Motor Credit Co.* (*In re Simmons*), 237 B.R. 672, 674 (Bankr. N.D. Ill. 1999) (debtor failed to show complaint alleging lender regularly engaged in filing inflated secured proofs of claim would advance any of the goals of §105).  The reasoning finding a lack of authority under 11 U.S.C. § 105 is exemplified by *In re Lenior*:

> Section 105 provides a bundle of authorities for the bankruptcy judge to carry out jurisdiction supplied by other statutory sources. It certainly does not provide any cause of action allowing a plaintiff to bring an adversary action to recover for a defendant's allegedly fraudulent proofs of claim. Section 105 "delineates the limited equitable power of the bankruptcy courts" when it provides that a bankruptcy judge may issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under that provision, "a court may exercise its equitable power only as a means to fulfill some specific Code provision."

---

> to Rule 11 of the Federal Rules of Civil Procedure. Rule 9011(b) explicitly requires all filings with the court to present only facts which the party reasonably believes to have evidentiary support; debtors facing fraudulent proofs of claim could seek sanctions under that section. A motion for sanctions under Rule 9011 must be made separately from the objection to a proof of claim, potentially giving debtors additional time to discover any fraud on the part of the creditor. Bankruptcy courts also have the authority to sanction attorneys under 28 U.S.C. § 1927, which allows the court to hold attorneys liable for any excess expenses caused because of their unreasonable or vexatious conduct.

*Adair v. Sherman*, 230 F.3d 890, 895 fn.8 (7th Cir. 2000) (citing Fed. R. Bankr. P. 9011(c)(1)(A); *The Law Offices of Peter Francis Geraci v. Bryson* (*In re Bryson*), 131 F.3d 601, 603 (7th Cir. 1997); *In re Volpert*, 110 F.3d 494, 500–01 (7th Cir. 1997); *Knox v. Sunstar Acceptance Corp.* (*In re Knox*), 237 B.R. 687, 698–99 (Bankr. N.D. Ill. 1999)).

*In re Lenior*, 231 B.R. at 673 (quoting *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993);

citing *Official Unsecured Creditors' Comm. v. Stern* (*In re SPM Mfg. Corp.*), 984 F.2d 1305, 1311

(1st Cir. 1993); *In re Anderson*, 159 B.R. 830, 835 (Bankr. N.D. Ill. 1993) (stating "[Section] 105

is generally viewed as a source of authority to enter necessary orders only when authority to do so

is otherwise found. The statutory language thus suggests that an exercise of section 105 power be

tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or

objective.") (quoting 2 *Collier on Bankruptcy* ¶ 105.01 at 105-4 (15th ed. 1992))).

Other decisions have concluded 11 U.S.C. § 105 does provide a bankruptcy court with a

basis for sanctioning a creditor for filing a fraudulent proof of claim. *See Kerney v. Capital One Fin.*

*Corp.* (*In re Sims*), 278 B.R. 457, 480–81 (Bankr. E.D. Tenn. 2002); *In re Dansereau*, 274 B.R. 686,

689–90 (Bankr. W.D. Tex. 2002); *Tate v. NationsBanc Mortgage Corp.* (*In re Tate*), 253 B.R. 653,

667–69 (Bankr. W.D.N.C. 2000). The decision in *Tate* addressed the availability of a remedy

pursuant to 11 U.S.C. § 105 where Chapter 13 debtors had brought a class cause of action to recover

attorney fees routinely collected by an oversecured creditor as part of its proof of claim. In

concluding such a remedy could be found under § 105 of the Bankruptcy Code, the Court was

cognizant of the limitations of invoking that section:

> Despite the breadth of language in § 105, the Court's authority is not without
> limitation. The statutory language itself uses the term "provisions" and not the term
> "purposes" in describing the courts' power to effect the Code. This choice of
> terminology suggests that an exercise of § 105 must be linked to a specific Code
> section, and not merely to a general objective of the bankruptcy process.

*In re Tate*, 253 B.R. at 667 (citing *Hardy v. United States* (*In re Hardy*), 97 F.3d 1384, 1389 (11th

Cir. 1996) ("The language of § 105 encompasses any type of order, whether injunctive,

compensatory or punitive, as long as it is necessary or appropriate to carry out the provisions of the

Bankruptcy Code.")).

The Fourth Circuit has held that "[w]hile the equitable powers emanating from § 105(a) are quite important in the general bankruptcy scheme . . . these equitable powers are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules." *Official Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir. 1987). The Supreme Court has likewise held that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988).

Despite the argument of the creditor that no private right of action may be inferred under § 105, the court in *Tate* found a basis for sanction:

> Without determining the existence of an express or implied cause of action, the Court recognizes that § 506(b) and Rule 2016 create rights *and* duties for creditors in bankruptcy cases. A creditor may be entitled to payment of professional fees under its contract with a debtor, but before those funds will be paid from the bankruptcy estate, the creditor must affirmatively demonstrate their reasonableness to the court after notice. If a creditor elects to ignore the law to obtain such fees, it is well within the Court's authority under § 105 to rectify that error.
>
> Furthermore, the relief sought by the Plaintiffs–restitution of fees actually paid to [the creditor] by the class members–is nothing more than an equitable remedy necessary to preserve the benefits and burdens established in § 506 and Rule 2016. Under § 105, this Court has the power to grant restitution to effectuate those sections when, as here, a creditor has collected money from the estate on improperly filed claims.

*In re Tate*, 253 B.R. at 668–69 (citing *Simmons v. Ford Motor Credit Co.* (*In re Simmons*), 224 B.R. 879, 884 (Bankr. N.D. Ill. 1998) (finding that Bankruptcy Code did not impose a duty on creditor to obtain appraisal of collateral for valuation in proof of claim)).[11]

---

[11] In seeking imposition of sanctions for an alleged fraudulent proof of claim, debtors in other cases have also asserted a right of action for violations under Official Form 10 (*In re Sims*, 278 B.R. at 469–70), 11 U.S.C. § 502, (*In re Sims*, 278 B.R. at 466), and 18 U.S.C. § 152 (*Wood*

The Fourth Circuit Court of Appeals has provided guidance as to the appropriate purpose of a sanction pursuant to § 105. "The determination of what constitutes a 'necessary or appropriate' sanction of an attorney under Bankruptcy Code § 105(a) must be considered in relation to the universal goals of sanctioning attorneys—compensation to the injured party, punishment and deterrence." *Lutz v. Dalkon Shield Claimants Trust* (*In re A.H. Robins Co.*), 133 F.3d 913 (4th Cir. 1998) (unpublished table decision) (citing *Fahrenz v. Meadow Farm P'ship*, 850 F.2d 207, 211 (4th Cir. 1988) (stating that what constitutes reasonable amount of sanction imposed under Rule 11, which speaks in terms of an "appropriate sanction," must be considered in relation to sanctioning goals of compensation, punishment, and deterrence)).

In assessing these precedents, the Court is mindful both of the scope with which the Fourth Circuit Court of Appeals has construed § 105 of the Bankruptcy Code and its frequent admonition that § 105 only be used in conjunction with specific provisions of the Code. The Bankruptcy Code provides specific remedies and requirements concerning claims. It is this Court's belief that § 105 may be used to sanction the filing of a proof of claim violative of the Bankruptcy Code and abusive of the bankruptcy process, that is, as the federal criminal code aptly describes, a claim that is false or fraudulent. The filing of a false or fraudulent claim in a bankruptcy case would unquestionably constitute an abuse of the claims process as well as an attempted fraud upon the court. Filing a false or fraudulent claim in a bankruptcy proceeding is also undeniably violative of any number of specific Bankruptcy Code provisions, warranting the imposition of sanctions.

---

*v. United States* (*In re Wood*), 341 B.R. 804, 812 (Bankr. S.D. Fla. 2006), and *In re Szabo Contracting, Inc.*, 283 B.R. 242 (Bankr. N.D. Ill. 2002)). In each instance, the courts concluded these actions were unavailable to serve as a basis for an award of sanctions for a false or fraudulent proof of claim.

Despite the availability of other statutory or rule-based remedies, the Court's power to remedy

and punish for the filing of a false or fraudulent claim is within the strictures of its authority pursuant

to 11 U.S.C. § 105. In the instant matter, if the Court finds Claim Number 1 or Claim Number 9 is

false or fraudulent, sanctions may be imposed pursuant to § 105 of the Bankruptcy Code.

### C. Laches as a Basis for Imposition of Sanctions

The Varonas additionally contend that Portfolio Recovery unreasonably delayed asserting

their claims and therefore, laches provides an additional basis for the imposition of sanctions against

Portfolio Recovery. This contention is misplaced. Laches is an equitable defense that is properly

invoked when "unreasonable delay in pressing one's rights . . . prejudices the defendant." *Cook v.

City of Chicago*, 192 F.3d 693, 695 (7th Cir. 1999) (citations omitted). While laches has been

recognized as a possible defense to a motion for sanctions, *see, e.g.*, *In re Rollings*, Case No. 04-

31511-H3-7, 2008 WL 899300, at *9 (Bankr. S.D. Tex. Mar. 31, 2008), and *In re Carl F. Semrau

D.D.S., Ltd.*, 356 B.R. 677, 695–97 (Bankr. N.D. Ill. 2006), laches, by reason of its inherent

defensive status, provides no basis for the imposition of sanctions here against Portfolio Recovery.

### D. The Applicability of the Fair Debt Collection Practices Act

The Varonas rely upon interpretations of the Fair Debt Collection Practices Act that have

found a violation of the FDCPA where creditors threatened debtors with the collection of

indebtedness which is time-barred. The principal decision in this regard is *Kimber v. Federal

Financial Corp.*, 668 F. Supp. 1480 (M.D. Ala. 1987). In *Kimber*, among other claims, the plaintiffs

asserted that a creditor violated the FDCPA by threatening to sue, and suing to collect, on certain

debts even though, as far as the creditor knew, it was not entitled to recover in the suits because the

debts were stale. *Id.* at 1481. Kimber specifically claimed that the filing of the lawsuit against her

violated § 1692f of the FDCPA, which section states, "A debt collector may not use unfair or

unconscionable means to collect or attempt to collect any debt." Kimber argued that filing a lawsuit

to collect on a debt appearing to be time-barred, without first making a reasonable inquiry as to

whether the limitations period has been tolled, constituted an unfair and unconscionable practice

offensive to § 1692f. *Kimber*, 668 F. Supp. at 1487.

In agreeing with Kimber, the court concluded seeking collection of a time-barred debt

violated public policy:

> The court agrees with Kimber that a debt collector's filing of a lawsuit on a debt that
> appears to be time-barred, without the debt collector having first determined after a
> reasonable inquiry that that limitations period has been or should be tolled, is an
> unfair and unconscionable means of collecting the debt. As previously demonstrated,
> time-barred lawsuits are, absent tolling, unjust and unfair as a matter of public
> policy, and this is no less true in the consumer context. As with any defendant sued
> on a stale claim, the passage of time not only dulls the consumer's memory of the
> circumstances and validity of the debt, but heightens the probability that she will no
> longer have personal records detailing the status of the debt. Indeed, the unfairness
> of such conduct is particularly clear in the consumer context where courts have
> imposed a heightened standard of care—that sufficient to protect the least
> sophisticated consumer. Because few unsophisticated consumers would be aware
> that a statute of limitations could be used to defend against lawsuits based on stale
> debts, such consumers would unwittingly acquiesce to such lawsuits. And, even if
> the consumer realizes that she can use time as a defense, she will more than likely
> still give in rather than fight the lawsuit because she must still expend energy and
> resources and subject herself to the embarrassment of going into court to present the
> defense; this is particularly true in light of the costs of attorneys today.

*Id*. The court also rejected the argument that the defensive procedural posture of the statute of

limitations obligated the creditor's counsel to pursue the collection action:

> [The creditor] asserts, nevertheless, that because a statute of limitations is an
> affirmative defense which is waived if not raised, a plaintiff may not be penalized for
> knowingly filing a time-barred suit; indeed, according to [the creditor], its attorney
> was ethically authorized, if not bound, to pursue such a suit in light of the defensive
> posture of the limitations statute. Although the staleness issue has not been
> previously considered in relation to unfairness under the Fair Debt Collection
> Practices Act, the propriety of bringing a lawsuit to which there appears to exist a

18

> complete defense, without first making a reasonable inquiry as to whether the defense is in fact not complete, has been discredited elsewhere. Rule 11 of the Federal Rules of Civil Procedure demands that an attorney conduct a reasonable investigation into whether a claim is well grounded in law and fact, and not inspired by an improper purpose, before signing a pleading. Sanctions against attorney and client under the rule have been imposed where the attorney knew or should have known a claim was time-barred. Further, the fact that a defense is affirmative has not relieved counsel of their Rule 11 responsibilities in other contexts. In view of these holdings, [the creditor's] argument that its attorney was ethically authorized to pursue the collections in case the debtors failed to raise the statute of limitations defense lacks authority.

*Id.* at 1488 (citing *Steinle v. Warren*, 765 F.2d 95 (7th Cir. 1985); *S. Leasing Partners, Ltd. v. Bludworth*, 109 F.R.D. 643 (S.D. Miss. 1986) (suit barred by res judicata); *Hasty v. Paccar, Inc.*, 583 F. Supp. 1577 (E.D. Mo.1984) (lack of personal jurisdiction); *Van Berkel v. Fox Farm & Road Mach.*, 581 F. Supp. 1248 (D. Minn. 1984)). *See also Goins v. JBC & Assocs. P.C.*, 352 F. Supp. 2d 262, 272 (D. Conn. 2005) (holding that a debt collector may seek to collect on a time-barred debt but may not threaten litigation if such suit would be improper); *Stepney v. Outsourcing Solutions, Inc.*, Case No. 97-C-5288, 1997 WL 722972, at *4 (N.D. Ill. Nov. 13, 1997) (FDCPA claim stated where collection notice promised "no further collection action" if the time-barred debt was paid); *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 393 (D. Del. 1991) (threat of lawsuit which debt collector knows or should know is time-barred is violation of FDCPA).

Several courts have declined to apply the reasoning of *Kimber* where a time-barred debt was the subject of an alleged FDCPA violation. *See Freyermuth v. Credit Bureau Servs.*, 248 F.3d 767, 771 (8th Cir. 2001) (no violation of the FDCPA found because "a statute of limitations does not eliminate the debt; it merely limits the judicial remedies available"); *Wallace v. Capital One Bank*, 168 F. Supp. 2d 526, 528 (D. Md. 2001) (finding that "a limitations statute does not extinguish the debt but only provides a defense against its collection, [and thus,] a debt collector may seek

voluntary payment of a time-barred debt); *Shorty v. Capital One Bank*, 90 F. Supp. 2d 1330, 1331–33 (D.N.M. 2000) (New Mexico courts have held that statutes of limitations are procedural in nature and merely bar judicial remedies by which a party seeks to enforce his or her substantive rights so debt validation notice was not violative of FDCPA).

It appears a majority of courts that have considered whether a proof of claim may be the subject of a FDCPA violation have concluded the FDCPA is not intended to provide a remedy for claims filed in a bankruptcy proceeding. *Adair v. Sherman*, 230 F.3d 890, 895–96 (7th Cir. 2000); *Diamante v. Solomon and Solomon, P.C.*, Case No. 1:99CV1339, 2001 WL 1217226, at *4–6 (N.D.N.Y. Sept. 18, 2001); *Baldwin v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, Case No. 98-C-4280, 1999 WL 284788, at *4–6 (N.D. Ill. Apr. 26, 1999); *Gray-Mapp v. Sherman*, 100 F. Supp. 2d 810, 813–14 (N.D. Ill. 1999); *Gilliland v. Capital One Bank* (*In re Gilliland*), ___ B.R. ___, Adversary No. 07-1089-DWH, 2008 WL 1775525, at *1 (Bankr. N.D. Miss. Jan. 31, 2008); *Cooper v. Litton Loan Serv'g* (*In re Cooper*), 253 B.R. 286, 291 (Bankr. N.D. Fla. 2000); *but see Molloy v. Primus Auto. Fin. Servs.*, 247 B.R. 804, 820–21 (C.D. Cal. 2000) (finding that Bankruptcy Code does not preempt FDCPA).

Here, no issue exists as to the direct application of the FDCPA to provide a basis for recovery by the Varonas. This is because there is no assertion by them of a claim pursuant to the FDCPA. Rather, the Varonas argue the Court should analogize the instant matter to the interpretations of the FDCPA that have concluded an attempt to collect a time-barred debt is violative of the FDCPA. The divergent purpose of the FDCPA, however, convinces the Court that the application of decisions such as *Kimber* to the instant matter is inappropriate.

Congress enacted the Federal Debt Collection Practices Act "'to eliminate abusive debt

20

collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Liles v. Am. Corrective Counseling Servs., Inc.*, 131 F. Supp. 2d 1114, 1118 (S.D. Iowa 2001) (quoting 15 U.S.C. § 1692(e)). The FDCPA regulates the practices used to collect a debt. *Adair*, 230 F.3d at 895–96; *see also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("[T]he FDCPA is designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists."); *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 87–88 (4th Cir. 1994) (citing *Carroll v. Wolpoff & Abramson*, 961 F.2d 459, 460 (4th Cir. 1992), *cert. denied*, 506 U.S. 905 (1992)). The contrast in purpose of the FDCPA and the Bankruptcy Code has been well-noted by Judge Coar, who examined  the Supreme Court's decision in *Kokoszka v. Belford,* which addresses the application of a provision of the Consumer Credit Protection Act. *See Baldwin v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, Case No. 98-C-4280, 1999 WL 284788, at *4 (N.D. Ill. Apr. 26, 1999) (discussing *Kokoszka v. Belford*, 417 U.S. 642, 650–51 (1974)). In *Kokoszka*, the Supreme Court addressed the applicability of the larger statute of which the FDCPA is a part:

> The Congress did not enact the Consumer Credit Protection Act in a vacuum. The drafters of the statute were well aware that the provisions and the purposes of the Bankruptcy Act and the new legislation would have to coexist. Indeed, the Consumer Credit Protection Act explicitly rests on both the bankruptcy and commerce powers of the Congress. . . .
> An examination of the legislative history of the Consumer Protection Act makes it clear that, which it was enacted against the background of the Bankruptcy Act, it was not intended to alter the clear purpose of the [Bankruptcy] Act to assemble, once a bankruptcy petition is filed, all of the debtor's assets for the benefit of his creditors. Indeed, Congress' concern was not the administration of a bankrupt's estate but the prevention of bankruptcy in the first place. . . .
> . . . .
> In short, the Consumer Credit Protection Act sought to prevent consumers from entering bankruptcy in the first place. However, if despite its protection,

bankruptcy did occur, the debtor's protection and remedy remained under the
Bankruptcy Act.

*Kokoszka v. Belford*, 417 U.S. 642, 650–51 (1974) (citing *Segal v. Rochelle*, 382 U.S. 375 (1966)).

Against this background, Judge Coar concluded that:

Like with the wage garnishment provisions of the Consumer Credit Protection Act,
a key function of the FDCPA provisions of the Consumer Credit Protection Act was
to eliminate practices that "contribute to the number of personal bankruptcies."
Neither set of provisions demonstrates even the slightest intent on the part of
Congress to interfere with the intricate workings of the bankruptcy system.

*Baldwin*, 1999 WL 284788, at *4 (quoting 15 U.S.C. § 1692(a)).

The concerns found by the courts as to the FDCPA are not in evidence here. The FDCPA

guards against collection practices waged directly against a potentially unknowledgeable consumer.

In the bankruptcy process, frequently, as here, debtors are represented by knowing counsel with the

system of court scrutiny available to review claims and protect the rights of parties, including the

debtor. As such, and as a number of courts have concluded in finding the FDCPA inapplicable to

bankruptcy claims, there is no compulsion to invoke the principles of the FDCPA in the instant

matter.

Lastly, and perhaps most importantly, the cases advocated by the Varonas interpreting the

FDCPA have condemned the attempt to collect time-barred debt relying upon the provisions of

the FDCPA prohibiting "unfair and unconscionable" collection practices. In distinct contrast, the

appropriate standard for judgment of whether sanctions should be imposed in the bankruptcy claim

process is whether the proof of claim is "false or fraudulent," reflecting the essence of the purpose

of the Bankruptcy Code to assemble and validate claims against a debtor's estate, in

contradistinction of the purpose of FDCPA, which is to provide an action to contest the *method* of

debt collection. *See Adair v. Sherman*, 230 F.3d 890, 895–96 (7th Cir. 2000). Accordingly, the

Court's inquiry to resolve the request for sanctions must properly turn to analysis of the question of whether Claim Number 1 or Claim Number 9 is false or fraudulent.

### E. Is Claim Number 1 or Claim Number 9 False or Fraudulent?

The ultimate inquiry of this Court then is to ascertain whether either Claim Number 1 or Claim Number 9 is false or fraudulent. We begin with the definition of "claim" under the Bankruptcy Code:

> The term "claim" means–
>
> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5) (2008). As the Supreme Court has observed:

> We have previously explained that Congress intended by this language to adopt the broadest available definition of "claim." In *Davenport*, we concluded that "'right to payment' [means] nothing more nor less than an enforceable obligation. . . .'"

*Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (quoting *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990); citing *Ohio v. Kovacs*, 469 U.S. 274, 279 (1985)).

What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of preempting federal law, is to be determined by reference to state law. *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946) (citing *Sec. Mortgage Co. v. Powers*, 278 U.S. 149, 153, 154 (1928); *Bryant v. Swofford Bros. Dry Goods Co.*, 214 U.S. 279, 290, 291 (1909)). The debts in question here originated apparently as credit card obligations of Mrs. Varona. *See* Proofs of Claim Numbers 1 and

23

9.  None of the documentation evidencing the original obligations was provided to the Court, nor

were the contracts upon which the debts were founded. Accordingly, the Court is unable to glean

whether any choice of governing law was contractually agreed to by Mrs. Varona and the original

credit card issuers.

Judge Mitchell has summarized Virginia law concerning choice of law in a contractual

context:

> Unlike a forum selection clause that states *where* the action is to be brought, a choice
> of law provision is an agreement by the parties on whose law the contract is
> governed. Nowhere on the invoices is there a choice of law provision. More
> importantly, this court sits in Virginia and [the creditor] has consented to the
> jurisdiction of this court by filing a proof of claim . . . . Therefore, the court must
> look to Virginia's conflict of law rules to determine whose substantive law applies.
>     Under Virginia conflict of law rules, the law of the place where the contract
> was made governs issues concerning the interpretation, validity, and enforceability
> of the contract. A contract is made where the final act completing the contract
> occurs. However, the law of the place of performance governs issues concerning
> performance of the contractual duties. In other words if the issue is one of breach of
> contract, then the law where performance occurred applies.

*Official Comm. of Unsecured Creditors v. Fairchild Dornier GMBH* (*In re Dornier Aviation* (*N.*

*Am.) Inc.*), Adversary No. 02-8199-SSM, 2005 WL 4781236, at *12 (Bankr. E.D. Va. Feb. 8, 2005)

(citing *Bryant Elec. Co. v. City of Fredericksburg*, 762 F.2d 1192, 1196 n.8 (4th Cir. 1985)

("[Virginia courts have held that] the contracting parties may by agreement choose what law will

govern their contract."); *Johnson v. MPR Assocs., Inc.*, 894 F. Supp. 255, 257 n.1 (E.D. Va. 1994);

*Chesapeake Supply & Equip. Co. v. J.I. Case Co.*, 700 F. Supp. 1415, 1417 (E.D. Va. 1988); *Ins.*

*Co. of N. Am., Inc. v. United States Gypsum Co.*, 639 F. Supp. 1246, 1248 (W.D. Va. 1986);

*Woodson v. Celina Mut. Ins. Co.*, 211 Va. 423, 426, 177 S.E.2d 610, 613 (1970) ("The nature,

validity and interpretation of contracts are governed by the law of the place where made, unless the

contrary appears to be the express intention of the parties."). Accordingly, in the absence of any

evidence of a contractual choice of law provision between the original credit card issuers and Mrs.

Varona, the Court applies the law of the Commonwealth of Virginia in determining the validity of

the instant claims.

In Virginia, a debt for which collection action has become barred by the running of a statute

of limitations is not extinguished; rather, the bar of the statute operates to prevent enforcement:

> [S]ome of the courts which hold that the running of the statute of limitations against
> the principal debtor discharges the guarantor or surety of liability, base this
> conclusion upon the theory that there has been an extinguishment of the debt by the
> bar of the statute, and that, therefore, the guarantor or surety is released. Typical of
> these are *Bass v. Harkreader*, 162 Tenn. 518, 39 S.W.(2d) 275 [(1931)]; *Bridges v.
> Blake*, 106 Ind. 332, 6 N.E. 833 [(1886)]; *Pacific Elevator Co. v. Whitbeck*, 63 Kan.
> 102, 64 P. 984, 88 Am. St. Rep. 229 [(1901)].
>
> It is settled in this State that the running of the statute of limitations merely
> bars the creditor's remedy but does not extinguish the debt.

*Fid. & Cas. Co. of New York  v. Lackland*, 175 Va. 178, 186–87, 8 S.E.2d 306, 309 (1940) (citing

*Virginia Hot Springs Co. v. McCray*, 106 Va. 461, 474, 56 S.E. 216, 221 (1907); *Smith's Ex'x v.

Washington City, Virginia Midland & Great S. R.R. Co.*, 33 Gratt.(74 Va.) 617, 620, 621 (1880)).

Further, in Virginia, the bar of a statute of limitations must be asserted as an affirmative

defense. Section 8.01-235 of the Code of Virginia provides:

> The objection that an action is not commenced within the limitation period
> prescribed by law can only be raised as an affirmative defense specifically set forth
> in a responsive pleading. No statutory limitation period shall have jurisdictional
> effects and the defense that the statutory limitation period has expired cannot be set
> up by demurrer. This section shall apply to all limitation periods, without regard to
> whether or not the statute prescribing such limitation period shall create a new right.

Va. Code Ann. § 8.01-235 (1950) (2007 Repl. Vol.).[12] Where a party pleads the statute of limitations

---

[12] Prior to the enactment of Section 8.01-235 of the Code of Virginia (1950), certain
"special" statute of limitations, where the act creating the right established the time limitation for
the bringing of such an action, required it to be affirmatively plead that the action was timely
commenced. As noted by the revisors of the Code:

as a defense, that party has the burden of showing by a preponderance of the evidence that the cause

of action arose prior to the statutory period before the action was instituted. *Columbia Heights

Section 3, Inc. v. Griffith-Consumers Co.*, 205 Va. 43, 47–48, 135 S.E.2d 116, 119 (1964) (citing

*S. Ry. Co. v. Watts*, 134 Va. 503, 510, 114 S.E. 736 (1922); *Va. Lumber & Extract Co. v. O.D.

McHenry Lumber Co.*, 122 Va. 111, 122, 94 S.E. 173 (1917); *Virginia Ry. & Power Co. v. Ferebee*,

115 Va. 289, 290, 78 S.E. 556 (1913); *Goodell v. Gibbons*, 91 Va. 608, 611–12, 22 S.E. 504 (1895)).

An examination of Claim Number 1 and Claim Number 9 convinces the Court that these

---

Proposed § 8.01-235 changes present Virginia case law on pleading statutes of limitation. The common law rule adopted by the Supreme Court distinguishes between "pure" statutes of limitations which theoretically affect only the availability of a remedy (and not the underlying right) and "special" limitations prescribed by a statute creating a new right not available at common law (e.g., the wrongful death statute); Virginia courts have held that "special" limitations prescribed by statutes creating a new right must appear on the face of the complaint or be subject to demurrer while a "pure" statute of limitation must be specifically pleaded as an affirmative defense by the party claiming its benefit and cannot be taken advantage of by demurrer. Burks Pleading and Practice, § 236 (4th ed., 1952); *Branch v. Branch*, 172 Va. 413, 2 S.E.2d 327 (1939). Such a distinction in pleading has been premised on the theory that special statutes of limitations contained in statutes creating a new right not available at common law are jurisdictional in effect. *Branch v. Branch*, *supra*, at 417–18.

The proposed section would overrule *Branch v. Branch*, *supra*. Although the result would be the abrogation of a present rule of Virginia pleading, the uniformity and simplicity in pleading achieved thereby outweigh the needless complexity and confusion engendered by the old distinction between "pure" and "special" limitations. Moreover, the proposal has the additional advantage of removing jurisdictional considerations from the application of statutes of limitations. Finally, although defendants will be required by the proposal to plead all statutory limitations specifically as affirmative defenses in responsive pleadings and can no longer set up "special" limitations by demurrer, the additional burden placed on defendants is slight compared with the appropriateness and certainty in pleading thus achieved.

Report of The Virginia Code Commission To The Governor and The General Assembly of Virginia, House Doc. No. 14, 149–50 (1977).

claims are neither false nor fraudulent. The claims facially indicate the circumstances under which

they were incurred; there is no attempt to obfuscate the timing of their incurrence so as to mask the

potential bar of time. Most importantly, while collection of the claims is arguably time-barred, under

Virginia law the debts continue to exist. The bar of the statute of limitations raised by the Varonas

in their Claim Objections prevents enforcement of the claims, but the claims are not extinguished.

As such, asserting the claims in the bankruptcy of the Varonas does not render the claims either

"false" or "fraudulent," and the imposition of sanctions is not appropriate.[13]

### F. Award of Attorney Fees

The Varonas also seek an award of attorney fees. Such an award was considered in *In re*

*Henry*, 311 B.R. 813 (Bankr. W.D. Wash. 2004), where debtors objected to proofs of claims filed

by creditors based on the lack of supporting documentation. In denying the debtor's claim for

attorney fees, the court concluded:

> Under the American Rule, litigants in bankruptcy proceedings may recover
> their fees and costs incurred pre-petition that are provided for under a valid contract
> or applicable state law. Specific sections of the Bankruptcy Code also authorize
> creditors and debtors to recover their fees and costs incurred post-petition. In
> addition, at least in the Ninth Circuit, creditors and debtors may have a right to
> recover post-petition fees and costs when they prevail in an action litigated in
> bankruptcy court that involves substantive issues under a contract providing for the
> recovery of attorneys' fees under state law. Here, however, there is no evidence in
> the record of a contract giving either party a right to legal fees.

---

[13] The Court does not consider whether the assertion of a claim subject to the bar of a
statute of limitations where the state law is divergent from that of Virginia is either false or
fraudulent. Despite the concerns of the Varonas that Portfolio Recovery may be filing time-
barred claims throughout the Bankruptcy Courts of the United States, this Court is appropriately
restricted to the confines of the instant matter. Portfolio Recovery should not accept this ruling as
a blessing of any of their policies or procedures or as an advisory opinion condoning the filing of
allegedly time-barred claims in any other bankruptcy proceeding. This Court only decides that
under the specific circumstances here, the filing of Claim Number 1 and Claim Number 9 are not
sanctionable.

The debtors argue instead that the Court may use Section 105(a) to award them fees to enforce each creditor's compliance with the claims filing rules. That section authorizes a bankruptcy court to use its equitable power to issue any order that is necessary or appropriate to carry out the provisions of the Code. The Ninth Circuit Court of Appeals has held that a bankruptcy court may exercise its equitable power only as a means to fulfill some specific Code provision. The Ninth Circuit has affirmed the bankruptcy court's authority to enforce its orders and the Code and Rules by imposing a civil sanction, including an award of attorneys' fees and costs, *In re Dyer*, 322 F.3d 1178 (9th Cir. 2003), but has rejected the notion that Section 105(a) is a catch-all private right of action for the enforcement of other Code sections.

The debtors in this case did not request sanctions, *per se*, nor did they comply with the requirements of Rule 9011 as part of the objection process. More importantly, the debtors have not proved that eCast or any of the other creditors violated a specific provision of the Code. It is true that each of the creditors failed to comply with Rule 3001(c), but the case law cited above holds that the remedy for non-compliance with that rule is to deny the claim *prima facie* effect under Section 502(a). The plain language of Section 502(a) permits a creditor to file a claim that is invalid on its face but that is deemed valid unless an interested party objects. Therefore, under existing authority, the law permits the very process that has occurred in this case.

*Id.* at 821–22 (citing 11 U.S.C. §§ 362(h), 506(b); Fed. R. Bankr. P. 9011; *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("[W]hatever equitable powers remain in the bankruptcy court must and can only be exercised within the confines of the Bankruptcy Code."); *Saxman v. Educ. Credit Mgmt. Corp.* (*In re Saxman*), 325 F.3d 1168 (9th Cir. 2003) (holding that a bankruptcy court is authorized to use Section 105 to partially discharge a student loan obligation consistent with the provisions of Section 523(a)(8)); *Walls v. Wells Fargo Bank*, 276 F.3d 502, 506–07 (9th Cir. 2002); *Ford v. Baroff* (*In re Baroff*), 105 F.3d 439 (9th Cir. 1997) (Court holds that debtor is entitled to recover attorneys' fees under contract governed by California law where bankruptcy court applied California law to the dispute)). Having concluded the claims in question are neither false nor fraudulent, no basis exists for the Court to award attorney fees to the Varonas for their successful objections to Claim Number 1 and Claim Number 9.

### G. Should the Court Permit the Withdrawal of Claim Number 1 and Claim Number 9?
### Should the Court Award of Sanctions for the Attempted Withdrawal of
### Claim Number 1 and Claim Number 9 By Portfolio Recovery?

The Varonas also seek an award of sanctions by reason of what they characterize as an

improper attempt to withdraw Claim Number 1 and Claim Number 9 by Portfolio Recovery.

Specifically, the Varonas allege:

> 8. On September 27, 2007, after the debtors had filed their objections to claims 1 and
> 9, Portfolio Recovery filed with the court documents attempting to withdraw claims
> 1 and 9, notwithstanding the language of Rule 3006 of the Federal Rules of
> Bankruptcy Procedure which requires a hearing on withdrawal after the filing of an
> objection to the underlying claim.

> 9. The attempted withdrawal was purportedly signed by Dolores Garcia, Lead
> Bankruptcy Specialist, Portfolio Recovery Associates, L.L.C., P.P. Box 41067,
> Norfolk, VA 23541. No state bar number or telephone number was listed and there
> was no certificate of service.

Objections to Claim, ¶¶ 8–9.  The Varonas contend these actions by Portfolio Recovery violate a

number of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia

and a Federal Rule of Bankruptcy Procedure:

> Local Bankruptcy Rule 5005-1(C)(4) requires that all documents submitted
> on behalf of a corporation, other than proofs of claim, be signed by an attorney
> admitted to practice before this court.

> Local Bankruptcy Rule 5005-1(C)(5) requires that all pleadings show the
> state bar number and telephone number of the person filing the pleading. Neither a
> state bar number or a telephone number appears on the withdrawal documents.

> Local Bankruptcy Rule 5005-1(C)(8) requires that all pleadings show proof
> of service. There are no certificates of service on the withdrawal documents.

> Rule 3006 of the Federal Rules of Bankruptcy Procedure states that a creditor
> may, of right, withdraw a claim unless an objection has been filed, and then the claim
> may only be withdrawn on order of the court after notice and hearing.

Memorandum of Authorities Regarding Debtors' Objections to Proofs of Claim Numbers 1 and 9

29

and Objections to the Withdrawals of Said Claims (hereinafter, "Varona Memorandum"), filed

November 19, 2007, at 7–8.

Rule 3006 of the Federal Rules of Bankruptcy Procedure provides for the circumstances for

the withdrawal of a proof of claim:

> A creditor may withdraw a claim as of right by filing a notice of withdrawal, except
> as provided in this rule. If after a creditor has filed a proof of claim an objection is
> filed thereto or a complaint is filed against that creditor in an adversary proceeding,
> or the creditor has accepted or rejected the plan or otherwise has participated
> significantly in the case, the creditor may not withdraw the claim except on order of
> the court after a hearing on notice to the trustee or debtor in possession, and any
> creditors' committee elected pursuant to § 705(a) or appointed pursuant to § 1102
> of the Code. The order of the court shall contain such terms and conditions as the
> court deems proper. Unless the court orders otherwise, an authorized withdrawal of
> a claim shall constitute withdrawal of any related acceptance or rejection of a plan.

Fed. R. Bankr. P. 3006 (2008). A motion to withdraw a claim in the Bankruptcy Court has been

analogized to a motion to withdraw a complaint, and thus the considerations underlying Federal Rule

of Civil Procedure 41(a) apply to a motion to withdraw a proof of claim. *See In re 20/20 Sport, Inc.*,

200 B.R. 972, 979–80 (Bankr. S.D.N.Y. 1996) (citing Advisory Comm. Note to Fed. R. Bank. P.

3006; *Adkinson v. LTV Corp.* (*In re Chateaugay Corp.*), 165 B.R. 130, 132 (S.D.N.Y. 1994)); *see*

*also In re Kaiser Group Int'l, Inc.*, 272 B.R. 852, 855 (Bankr. D. Del. 2002).

Consideration of a number of factors has been suggested when courts determine whether to

permit the withdrawal of a claim:

> In determining whether a proof of claim can be withdrawn without prejudice, courts
> thus consider the following factors: "the plaintiff's diligence in bringing the motion;
> any 'undue vexatiousness' on plaintiff's part; the extent to which suit has progressed,
> including the defendant's effort and expense in preparation for trial; the duplicative
> expense of relitigation; and the adequacy of plaintiff's explanation for the need to
> dismiss." As with a Rule 41(a)(2) motion, a motion to withdraw a proof of claim is
> left to the court's discretion, which is "to be exercised with due regard to the
> legitimate interests of both [parties]." In general, withdrawal should be granted
> unless the party opposing the motion can demonstrate that it would be legally

30

prejudiced by the withdrawal.

*Sempra Energy Trading Corp. v. Covanta Union, Inc.* (*In re Ogden New York Servs., Inc.*), 312 B.R. 729, 732–33 (S.D.N.Y. 2004) (quoting *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990) (involving Rule 41(a)(2) motion for voluntary dismissal); *In re 20/20 Sport*, 200 B.R. at 979 (quoting *Zagano* as applying to Rule 3006 motion); citing *Resorts Int'l, Inc. v. Lowenschuss* (*In re Lowenschuss*), 67 F.3d 1394, 1399 (9th Cir. 1995) (stating that Rule 3006 motion depends on showing of legal prejudice by defendant); *In re Chateaugay Corp.*, 165 B.R. at 132; *In re Kaiser Group Int'l*, 272 B.R. at 855–56 (applying Rule 41 standard of "whether the defendant will suffer some actual legal prejudice as a result of the dismissal" and allowing withdrawal of claim subject to certain conditions where no prejudice was shown); *In re Armstrong*, 215 B.R. 730, 732 (Bankr. E.D. Ark. 1997) ("Since the general policy under Rule 41(a) is to permit dismissal, withdrawal of a proof of claim should in most instances be permitted unless the result is legal harm to another party in interest."); *In re County of Orange*, 203 B.R. 977, 982 (Bankr. C.D. Cal. 1996) ("The history and case law behind FRBP 3006 supports [the] position that an objecting party must show legal prejudice to prevent the withdrawal of a claim.")). *See also Credit Alliance Corp. v. Penn Hook Coal Co.* (*In re Penn Hook Coal Co.*), 68 B.R. 804, 808 (Bankr. W.D. Va. 1987), *rev'd on other grounds*, 77 B.R. 57 (W.D. Va. 1987) (withdrawal of claim not permitted where purpose of withdrawal was to defeat bankruptcy court jurisdiction).

In the context of a Rule 41 motion to voluntarily dismiss a complaint, Judge Spencer has recommended analysis of the following factors:

> Courts typically examine four factors when determining whether a Rule 41(a)(2) dismissal should issue with prejudice: (1) the plaintiff's diligence in moving for a voluntary dismissal; (2) the defendant's effort and expense in preparing for trial; (3) the litigation's present stage, i.e., whether a dispositive motion is pending; and (4)

the adequacy of the plaintiff's explanation for the need to dismiss. These factors are not exhaustive, and no factor should be given weight over another.

*Kozak v. Fedex Kinko's, Inc.*, Case No. 3:07CV187, 2008 WL 682580, at *2 (E.D. Va. Mar. 7, 2008)

(citing *Gross v. Spies*, 133 F.3d 914 (4th Cir. 1998) (unpublished table decision); *Phillips USA, Inc.*

*v. Allflex USA, Inc.*, 77 F.3d 354, 358 (10th Cir. 1996); *Zagano*, 900 F.2d at 14). Legal prejudice is

considered on a case by case basis:

> [P]rejudice is a function of other, practical factors including: "the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; insufficient explanation of the need for a dismissal; and the present stage of litigation." These factors are neither exhaustive nor conclusive; the court should be sensitive to other considerations unique to the circumstances of each case. And "[i]n reaching its conclusion, the district court should endeavor to insure substantial justice is accorded to both parties, and therefore the court must consider the equities not only facing the defendant, but also those facing the plaintiff."

*Brown v. Baeke*, 413 F.3d 1121, 1124 (10th Cir. 2005)) (quoting *Ohlander v. Larson*, 114 F.3d 1531,

1537 (10th Cir. 1997); *County of Santa Fe v. Pub. Serv. Co.*, 311 F.3d 1031, 1048 (10th Cir. 2002))

(quoted in *Spann v. Burtt*, Case No. 4:06-3083-HFF-TER, 2007 WL 2822903, at *10 (D.S.C. Sept.

17, 2007)). It is the objecting party's burden to demonstrate that he would be legally prejudiced if

a creditor is permitted to withdraw a proof of claim. *In re Ogden New York Servs.*, 312 B.R. at 733

(citing *In re County of Orange*, 203 B.R. at 982).

The Varonas assert they have incurred attorney fees and damages by reason of the filing of

Claim Number 1 and Claim Number 9. However, the incurrence of attorney fees and costs were the

result of the Varonas electing to litigate the issue of whether Portfolio Recovery should be

sanctioned for filing a facially time-barred claim. Additionally, the Varonas hoped to establish a rule

which prospectively would prohibit the filing of a facially time-barred claim in future bankruptcy

cases. The Court has declined to adopt these positions for the reasons set forth herein. Unlike some

other scenarios in which claim withdrawal was undertaken for an improper purpose, such as depriving a court of jurisdiction or for tactical advantage, here it appears the withdrawal is predicated upon the unwillingness by Portfolio Recovery to contest the validity of the Claim Objections interposed by the Varonas. Furthermore, the attempted withdrawal of Claim Number 1 and Claim Number 9 occurred proximately to the original filing of the claims, evidencing no apparent attempt to delay the resolution of the allowance or disallowance of the claims or to require the Varonas to expend monies unnecessarily in resolution of this claims process. There is simply no showing of legal prejudice on the part of the Varonas so as to prohibit the withdrawal of Claim Number 1 and Claim Number 9.

The Varonas also seek sanctions for the attempted withdrawal of Claim Number 1 and Claim Number 9 by the Withdrawals signed by Dolores Garcia, who is stipulated not to be an attorney authorized to practice before the Court. Specifically, the Varonas contend:

> One of the reasons that the rules require that counsel file documents on behalf of corporations is that there is then a person who may be held accountable for throwing a monkey-wrench into the system. Dolores Garcia, Lead Bankruptcy Specialist for Portfolio Recovery is not a lawyer admitted before this court who may be called before the court in the same way as an attorney to answer for her filings. The local rules of court as well as the Federal Rules of Bankruptcy Procedure call for certain things to be done in a specific manner and Portfolio Recovery has chosen to proceed outside of the manner specified by the rules.

Varona Memorandum, at 20. The Varonas assert the Withdrawals violated several local rules of this Court, including Local Rule 5001-1(C)(4) requiring pleadings to be signed by counsel. Additionally, they contend the failure to include a proof of service on the Withdrawals caused a violation of Local Rule 5005-1(C)(8).[14]

---

[14] The signing of the Withdrawals by a non-attorney would not presently violate the Local Rules of this Court. Effective March 17, 2008, Rule 9010-1 of the Local Rules of

The violation of these Local Rules is apparent from a review of the Withdrawals, and the Varonas are correct in their concern over these violations. While the Court is empowered to sanction for the violation of its Local Rules and shares the legitimate concerns of the Varonas in this regard, here there does not appear to be any harm incurred by either the Varonas or the Court by reason of these violations. In particular, while a violation of the then-effective Local Bankruptcy Rule requiring counsel to execute a claim withdrawal occurred with regard to the Withdrawals, the nature of the instructions concerning who may execute a proof of claim contained in Official Form 10 may have lead Dolores Garcia to assume, albeit incorrectly, that she was also authorized to execute the notices of withdrawal. For all these reasons, the Court elects to exercise its discretion in this circumstance and will not levy sanctions against Portfolio Recovery by reason of the filing of the Withdrawals.[15]  Accordingly, the Court will permit Portfolio Recovery to withdraw Claim Number

---

Bankruptcy Procedure of the United States Bankruptcy Court for the Eastern District of Virginia now provides, in pertinent part:

> **Requirement for Counsel**: Except for filing or withdrawing a proof of claim, request for notices or notice/service, notice of appearance, reaffirmation agreement, creditor change of address, transfer of claim, or a transcript of court proceedings, no party or entity other than a natural person acting in his or her own behalf or, to the extent permitted by §304(g) of Pub. L. 103-394, a child support enforcement agency, may appear in a bankruptcy case or proceeding, sign pleadings, or perform any act constituting the practice of law except by counsel permitted to appear under LBR 2090-1.

Local Bankr. R. 9010-1.

[15] Rule 3006 of the Federal Rules of Bankruptcy Procedure permits the withdrawal of a proof of claim unless a party in interest has filed an objection to that claim. Here the Varonas filed their Objections to Claims prior to the filing of the notices of withdrawal, necessitating the conduction of a hearing by this Court on the Withdrawals. To the extent the Court originally marked Proof of Claim Number 1 and Proof of Claim Number 9 as "withdrawn" on the Court's docket despite the pendency of the claim objections, such notation was in error, and the Court proceeded to conduct a hearing in accordance with the Federal Rules of Bankruptcy Procedure.

1 and Claim Number 9 in the Varonas' bankruptcy case.

### III. Summary

This Court is empowered to sanction the filing of a false or fraudulent claim pursuant to §

105 of the Bankruptcy Code. Under Virginia law, the claims in question here were not extinguished

by the running of the statute of limitations, and accordingly the claims are not false or fraudulent.

The conclusion in the instant matter does not evidence a lack of interest of this bench in the

claims process, nor should any party doubt the dedication of this Court in ensuring the integrity of

all of its proceedings. Rather, in this very specific instance, this Court cannot conclude that the filed

claims in question were of a false or fraudulent nature demanding the imposition of sanctions. A

separate order will be issued sustaining in part the Claims Objections, denying the Motions for

Sanctions, granting the Motions to Withdraw Claim Number 1 and Claim Number 9, and overruling

the Objections to Withdrawals.

The Clerk shall forward a copy of this Memorandum Opinion to Thomas B. Dickenson,

counsel for Jamy Monte Varona, Jr., and Danielle Demetrius Varona; to David A. Greer, counsel

for Portfolio Recovery Associates, LLC; to Debera F. Conlon, Assistant United States Trustee and

Chapter 13 Trustee; and to Kenneth N. Whitehurst III, Office of the United States Trustee.

**Entered this 22nd day of May, 2008, at Norfolk in the Eastern District of Virginia.**

STEPHEN C. ST. JOHN
United States Bankruptcy Judge